

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

**LIONEL DRAKE, PLAINTIFF**

**vs.**                                   **CASE NO** _10 - 2671 - JTM/DJW_
                                          **JURY TRIAL REQUESTED**
                                          **PLACE OF TRIAL**
                                          **KANSAS CITY, KANSAS**

**THE ADVERTISING COUNCIL, INC., and
COX COMMUNICATIONS, INC., DEFENDANTS**

## COMPLAINT
## FOR FEDERAL ANTITRUST VIOLATIONS
## AND UNFAIR COMPETITION

1.     This action is brought to recover damages suffered by plaintiff
as a direct result of defendants unlawfully monopolizing the
national public service programming and advertising market in the
United States,   and defendants anticompetitive and exclusionary
agreements,     policies and practices.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 USC 1337 and 28 USC 1331, as this action arises under Sections 1 and 2 of the Sherman Act, 15 USC Sections 1 and 2, and Sections 4 and 16 of the Clayton Act, 15 USC Sections 15, 26 and 13a.

3.      Venue is proper in this judicial district under 15 USC Section 22 as both defendants can be found in this district,  and both defendants transact business in this district,  many of the acts and omissions that gave rise to the claims in this action occurred in this district,  and the damages were suffered by plaintiff in this district.

## PARTIES

4.      Plaintiff is a freelance writer and television producer.

5.      Defendant The Advertising Council, Inc. is a private nonprofit New York corporation headquartered in New York City, New York.   The Advertising Council, Inc., aka the Ad Council, is the largest public service advertising agency in the world. The Advertising Council Inc is also the largest public relations firm in the world,  used for public relations by more corporations and government agencies than any other public relations firm.

2

6.    Defendant Cox Communications,    Inc.   is    a    Georgia corporation headquartered    in    Atlanta,    Georgia.    Cox Communications,    Inc. is a major operating subsidiary of Cox Enterprises, Inc., who owns and controls    more    than    one third    of    America's    dominant    communications network,    cable television.

## THE RELEVANT MARKET

7.    Each    year    the    public    service    programming    and advertising market in the United States generates    billions    of    dollars worth    of    free airtime,    and billions of dollars in    sales    and    tax exempt    contributions from the public/audience.    The    demand    is constant    for    public    service    programming    and    advertising    in    the United States.

9.    The public    service    programming    and advertising market    in the United States is where public service programs and advertising sell the services of    public    service    causes.        If    the advertising and marketing are persuasive enough,    the audience will support the cause by paying    for the services using electronic money transfers,    credit card transactions,    and other forms of interstate commerce.

3

10. In 2009 alone The Advertising Council Inc reports receiving more than 2 billion dollars in free media and free airtime from defendant Cox Communications Inc and other "donors".

11. The Advertising Council Inc reports that in 2009 alone, Cox Communications Inc and a list of its competitors gave each "client" of The Advertising Council Inc 25 - 50 million dollars in free media and free airtime.

12. The Advertising Council Inc possesses, maintains, and exercises monopoly power over the national public service programming and advertising market in the United States.

13. The Advertising Council Inc obtained and maintains its monopoly power through the use of anticompetitive and exclusionary agreements, and the use of policies and practices designed to suppress and destroy competition in the national public service programming and advertising market in the United States.

4

14.    The Advertising Council Inc has no competitors who reasonably possess the actual or potential ability to deprive The Advertising Council Inc of any significant amounts of its monopoly, and so it is partly on this basis the plaintiff believes The Advertising Council Inc's share of the national public service programming and advertising market in the United States is greater than 90 percent.

## BACKGROUND

15.    Since World War II the Advertising Council Inc. has used its nonprofit, tax free status and stated charitable mission to dictate which public service causes receive access to the national mass media.

16.    Following the Second World War The Advertising Council Inc's monopoly over all national public service advertising in the United States became more and more entrenched year after year.

17.    Today, only "clients" of The Advertising Council Inc have access to the billions of dollars in free national public service airtime on Cox cable television and all other interstate television systems in the United States.

5

18.   Plaintiff is   a   new   entrant   in   the   national   public service programming and advertising market.   Plaintiff   has developed   innovative   public service   television   programs that   encourage   the   public   to   write   books   and   to develop   writing   skills,   and   also   public   service programs   that   encourage   respectful   religious dialogue   in   American society.   Plaintiff   was denied entry into the   national   public   service   programming   and advertising market   by   Cox   Communications   Inc   in   order   to expand   and   maintain   The   Advertising   Council   Inc's illegal monopoly, and to unreasonably restrict fair competition for the billions of dollars in free airtime   and the billions of dollars in financial support from the public/audience.

19.   Cable television is the dominant communications system in the United States.

20.   Cox   Communications   Inc will   only   cablecast   national public service   programs   obtained   from   The   Advertising Council   Inc's   programming   "universe".

6

21. All interstate television systems in the United States will only show national public service programs obtained from The Advertising Council Inc's programming "universe".

22. The national public service programming market on all interstate television systems in the United States is concentrated in the hands of The Advertising Council Inc.

23. The multi-firm concerted anticompetitive action going on each and everyday at The Advertising Council Inc is intended to put up barriers to entry into the public service programming market.

24. The Advertising Council Inc is where competitors join forces to exclude competition from the national public service advertising market, by concentrating all "donations" of free national public service airtime into the hands of The Advertising Council Inc, to maintain The Advertising Council Inc's monopoly power over the national public service programming and advertising market on cable television in the United States.

25. Defendants anticompetitive conduct continues to deprive the free marketplace of diverse national public service programming.

7

26.    Defendants anticompetitive conduct continues to deprive the viewing public and consumers of substitutable products.

27.    This action is brought to obtain relief for the injuries suffered by plaintiff as a result of defendants anticompetitive conduct, and for the benefit of the viewing audience and consumers,    by assuring that competition exists in the national public service programming and advertising market on cable television in the United States.

### THE ADVERTISING COUNCIL INC IS A PRIVATE CARTEL ACTING TO DESTROY COMPETITION

28.    The Advertising Council Inc holds a dominant position in the national public service programming and advertising market, and it does abuse its dominant market position to limit production, eliminate competition and unreasonably restrain trade. The Advertising Council Inc behaves totally independently of any competitive pressures because it operates as a monopolistic private cartel.

29.    The Advertising Council Inc's cartel members consist of numerous independent business enterprises,    all of whom have a financial interest in limiting competition in all public service advertising markets,    including the public service programming market on cable

8

television in the United States.

30.     Each member of The Advertising Council Inc cartel has an economic interest in regulating production, pricing, and marketing of public service causes and products.

31.     Each member of The Advertising Council Inc cartel is engaged in concerted action with the other cartel members to eliminate competition, to continue The Advertising Council Inc's monopoly, and to continue using The Advertising Council Inc as a common sales agency providing cartel members with mutual advantage.

32.     The Advertising Council Inc cartel members include:

a.     Viacom Inc., represented at The Advertising Council Inc by James W. Barge, EVP, Controller, Tax and Treasury, Viacom, Inc. James W. Barge serves as chairman of The Advertising Council Inc's Finance Committee.

b.     Cable Television Advertising Bureau Inc, represented at The Advertising Council Inc by Sean B. Cunningham, President and CEO, Cable Television Advertising Bureau Inc. Sean B. Cunningham serves as a director of The Advertising Council Inc.

c.   Disney Media Networks,   ESPN Inc,   and ABC Sports, represented at The Advertising Council Inc by George Bodenheimer, Co-Chairman,   Disney Media Networks,   President, ESPN Inc and ABC Sports,   Chairman, ESPN Board of Directors.   George Bodenheimer serves as a director of The Advertising Council Inc.

d.   Sony Pictures Television,   represented at The Advertising Council Inc by Steve Mosko,   President, Sony Pictures Television.   Steve Mosko serves as a director of The Advertising Council Inc.

e.   National   Cable   and   Telecommunications   Association, represented at The Advertising Council Inc by Kyle McSlarrow, President and CEO,   National Cable and Telecommunications Association.   Kyle McSlarrow serves as a director of The Advertising Council Inc.

f.   American   Advertising   Federation,   represented   at The   Advertising   Council   Inc   by   James   Edmond   Datri, President   and   CEO,   American   Advertising Federation.   James Edmond Datri is a director of The Advertising Council Inc.

10

g.     NBC Universal,    represented at The Advertising Council Inc by Bonnie Hammer,    President,   Cable Entertainment and Cable Studio, NBC   Universal.      Bonnie   Hammer   serves   as   a   director   of The Advertising Council Inc.

h.     Univision Networks,   represented at The Advertising Council Inc by Joe Uva,   Chairman and CEO,   Univision Networks.    Joe Uva serves as a director of The Advertising Council Inc.

i.     Fox Networks Group,   represented at The Advertising Council Inc by Tony Vinciquerra,    Chairman and CEO,    Fox Networks Group.   Tony Vinciquerra serves as a director of The Advertising Council Inc.

j.     BET Networks,   represented at The Advertising Council Inc by Debra Lee,   Chairman and CEO,   BET Networks.    Debra Lee serves as a director of The Advertising Council Inc.

k.     Comcast Corporation,   represented at The Advertising Council Inc by Charles W. Thurston,   President,   Comcast Spotlight,   Comcast Corporation.     Charles   W.   Thurston   serves   as   a   director   of   The Advertising Council Inc.

11

l.      National Association of Broadcasters,    represented at The Advertising Council Inc by Sen. Gordon H. Smith,   president and CEO, National Association of Broadcasters.    Sen. Gordon H. Smith serves as a director of The Advertising Council Inc.

m.      Turner Sports,  represented at The Advertising Council Inc by David Levy,   President, Turner Advertising Sales,   Turner Sports. David Levy serves as a director of The Advertising Council Inc.

n.      The Nielson Company,  represented at The Advertising Council Inc by Susan Whiting,    Vice Chair,    The Nielson Company. Susan Whiting serves as a director of The Advertising Council Inc.

o.      World Wrestling Entertainment,  represented at The Advertising Council Inc by Michelle Wilson,  EVP Marketing,  World Wrestling Entertainment.       Michelle Wilson serves as a director of The Advertising Council Inc.

p.      Discovery Communications,    represented at The Advertising Council Inc by David Zaslav,   President and CEO,   Discovery Communications.      David Zaslav serves as a director of The Advertising Council Inc.

q.    **National Basketball Association,** represented at The Advertising Council Inc by Kathy Behrens, EVP, Social Responsibility & Players Programs, National Basketball Association.    Kathy Behrens serves as a director of The Advertising Council Inc.

33.    All of the organizations listed in paragraph 32 of this complaint are members of The Advertising Council Inc cartel.    The list in paragraph 32 does not include all of The Advertising Council Inc's cartel members.

34.    The Advertising Council Inc cartel is a syndicate of America's most powerful corporations, all of whom have a financial interest in suppressing diverse public service ideas, speech and expression.

35.    Each member of The Advertising Council Inc cartel knowingly, willfully, and deliberately, acts with the other cartel members to unreasonably limit competition and to control and dominate the production and distribution of all national public service advertising in the United States.

36.    The Advertising Council Inc cartel is a combination of independent corporate economic entities who ALL profit from

13

the suppression of free speech and the suppression of competition in the national public service programming and advertising market in the United States.

37.    The Advertising Council Inc cartel members listed in paragraph 32 of this complaint are not the only cartel members. Cox Communications Inc is also a member of The Advertising Council Inc cartel,  as are numerous other corporations with an economic interest in unreasonably restricting national public service interstate commerce and advertising.

38.    Cox Communications Inc does have staff assigned to carry out the exclusionary agreements which deny  access to free airtime to all competitors of The Advertising Council  Inc.  Cox Communications Inc and the other cartel members ALL deny national public service airtime to any public service cause that has not paid millions of dollars to The Advertising Council Inc.

### THE ADVERTISING COUNCIL INC'S NUMBER ONE CLIENT IS THE FEDERAL GOVERNMENT OF THE UNITED STATES

39.    The federal government of the United States sponsors the most public service advertising through The Advertising Council Inc cartel.

**14**

Public service causes which have the political and financial support of the federal government are the number one causes promoted by The Advertising Council Inc cartel.

40.   The public service causes that have the political and financial support of the federal government benefit tremendously from The Advertising Council Inc's monopoly power.

41.   In 2009 alone Cox Communications Inc and the other cartel members "donated" over $1 billion dollars in free media and free airtime to the federal agencies who are "clients" of The Advertising Council Inc.

42.   Through the destruction of competition in the national public service programming and advertising    market,    the federal government is able to command the lion's share of all free national public service airtime  without any competition whatsoever for the public's support that is generated by the programming.

43.   All national public service airtime is concentrated in the hand's of The  Advertising  Council  Inc,  and  so  only  the  "clients"  of The Advertising Council Inc have access to the national public service programming   and   advertising   market   in   the   United   States.

**15**

44.   The public service causes supported by the federal government benefit tremendously from the destruction of competition caused by The Advertising Council Inc's illegal monopoly.

45.   The federal agencies and causes that benefit the most from The Advertising Council Inc's illegal monopoly are:

U. S. Department of Health and Human Services

Clinton Bush Haiti Fund

U. S.   Department of Energy

U. S. Department of State

U. S. Forest Service

Presidential Inaugural Committee

Gay, Lesbian and Straight Education Network

Hispanic Scholarship Fund

Library of Congress

Consumer Banker's Foundation

United Negro College Fund

United States Olympic Committee

U. S Department of Education

U. S. Department of Transportation

Federal Emergency Management Agency

New York City Office of Emergency Management

U. S. Environmental Protection Agency

46.    All of the federal agencies and causes in paragraph 45 of this complaint are "clients" of The Advertising Council Inc.

47.    Only the "clients" of The Advertising Council Inc have access to the national public service programming and advertising markets on Cox cable television and on all other interstate television systems the United States.

### "CLIENTS" OF THE ADVERTISING COUNCIL INC ARE UNJUSTLY ENRICHED BY THE ADVERTISING COUNCIL INC'S ILLEGAL MONOPOLY

48.    The Advertising Council Inc's "clients" make billions of   dollars off of The Advertising Council Inc's illegal monopoly.

49.    The Advertising Council Inc is the "largest provider of public service advertising in the United States".     And the mission of The Advertising Council Inc is to   "identify a select number"   of public service causes that will benefit from The Advertising Council Inc's illegal monopoly.

17

50.   As a direct result of all the free national public service airtime valued in the billions of dollars every year,     The Advertising Council Inc's "clients" make billions of dollars in public/audience contributions without any competition whatsoever.

51.   The   United   Negro   College   Fund,     for   example,   pays The Advertising Council Inc millions of dollars to be represented by The Advertising Council Inc.   In exchange for those payments The United Negro College Fund receives "free media and free airtime", as well as "free production and free marketing services".   As a result, The United Negro College Fund raised over $2.3 billion dollars in public support without any competition whatsoever,     public support remitted by all forms of interstate commerce,     including interstate electronic money   transfers,   credit   card   transactions,     and     other forms   of   interstate commerce.

52.   The   United   Negro   College   Fund   example   is   not   unique. Each "client" of The Advertising Council Inc is required to pay millions of dollars to The Advertising Council Inc cartel for "free media and free airtime"   and   for   "free production and free marketing services".

The "clients" of The Advertising Council Inc receive exclusive access to the billions of dollars in free airtime because of The Advertising Council Inc's anticompetitive policies and practices that have destroyed competition,    and as a result the "clients" of The Advertising Council Inc are unjustly enriched by The Advertising Council Inc's monopoly.

### THE ADVERTISING COUNCIL INC DEMANDS MILLIONS OF DOLLARS FOR FREE MEDIA AND FREE AIRTIME AND FREE PRODUCTION AND FREE MARKETING SERVICES

53.   No other weapon used by The Advertising Council Inc cartel to destroy competition is more decisive than defendants demand for millions of dollars in exchange for free airtime.   Defendants demand for millions of dollars,  in exchange for free airtime,   is a fatal blow to competition.

54.   The Advertising Council Inc cartel advertises on its website that that it will not even read an application unless it is paid $3,000.   And then on the same webpage they demand a "minimum" of $2.4 - $2.5 million dollars for the smallest limited "effort",   that will only reach "one target audience".    Wider audiences cost more. The Advertising Council Inc cartel makes it clear on its website that they control the national public service programming  and  advertising

19

markets in the United States.    And NO cause,    will have access to the national public service programming and advertising markets in the United States,   unless they are a "client " of The Advertising Council Inc cartel and monopoly.

55.    Cox Communications Inc has been prominently listed on the website of The Advertising Council Inc cartel.

56.    Cox Communications Inc "donates" millions of dollars every year in free airtime to The Advertising Council Inc monopoly.

57.    Cox Communications Inc will only cablecast national public service programs obtained from The Advertising Council Inc's programming "universe".

58.    Cox Communications Inc deprives the audience of the benefits of diversity and the benefits of  competition,     by       refusing      to cablecast  programs  not  provided by The Advertising Council Inc.

59.    The    Advertising    Council    Inc's    website    advertises    that Cox Enterprises Inc is a   "donor" and a "partner".

60.    In order  to preserve The Advertising Council Inc's monopoly Cox Communications Inc refuses to cablecast any national public service programs that are not obtained from The  Advertising  Council

Inc's programming "universe".

61.    Cox Communications Inc denied plaintiff national public service airtime in order to continue The Advertising Council Inc's monopoly.

## THE ADVERTISING COUNCIL INC ADVERTISES IT'S MARKETING SERVICES

62.    The national public service programming and advertising market generates billions of dollars in trade and interstate commerce every year in the United States,   but the entire national market is totally dominated by The Advertising Council Inc's marketing "campaigns".

63.    Each   "select"   cause   pays   millions   of   dollars   to The Advertising Council Inc,    to develop marketing "campaigns" that urge the audience to pay for charitable services .

64.    The Advertising Council Inc's marketing services are the main reason defendants illegal monopoly has grown stronger.

65.    The Advertising Council Inc uses celebrities,   including former presidents,   to convince the audience to pay large sums of money for charitable services.

66.    The Advertising Council Inc's   marketing "campaigns" only benefit causes that have the most money and political connections.

21

67. The Advertising Council Inc's marketing "campaigns" are designed to continue it's market domination, and the unjust enrichment of The Advertising Council Inc cartel.

68. Cox Communications Inc knowingly, willfully and deliberately, enforces and promotes The Advertising Council Inc's anti competitive policies, practices and marketing "campaigns", which deny competitors access to the national public service programming and advertising market in the United States.

69. Cox Communications Inc does have a business and financial relationship with The Advertising Council Inc.

70. Cox Communications Inc does profit commercially from The Advertising Council Inc's illegal monopoly.

71. Cox Communications Inc exploits The Advertising Counsel Inc's non profit status for commercial advantage, to inflate the commercial value of Cox Communications Inc's name recognition and public image.

72. Cox Communications Inc does have an agreement with The Advertising Council Inc to deny national public service airtime to all competitors of The Advertising Council Inc.

22

## DEFENDANTS EXCLUSIONARY AGREEMENT
## DENIES NATIONAL PUBLIC SERVICE AIRTME TO ALL
## COMPETITORS OF THE ADVERTISING COUNCIL INC

73.  Cox Communications Inc denies national public service airtime to all competitors of The Advertising Council inc.

74.  Defendants do have an actual and or de facto agreement to exclude competition,  by denying national public service airtime to all competitors of The Advertising Council Inc.

75.  Cox Communications Inc has never cablecast any public service announcements for any national cause that is not affiliated with The Advertising Council Inc.

76.  All national public service programming airtime on Cox cable television is devoted exclusively to making money for The Advertising Council Inc cartel and monopoly.

77.  Cox Communications Inc will only cablecast national public service programs obtained from The Advertising Council Inc's programming "universe".

78.  All national public service programming airtime on Cox cable television is awarded exclusively to The Advertising Council Inc's marketing "campaigns".

23

79.    There is no competition in the national public service programming and advertising market on Cox cable television. This is due to defendants exclusionary agreement,  which excludes all competitors of  The Advertising Council Inc from the national public service programming and advertising market in the United States.

### DEFENDANTS CONTINUE TO CONSPIRE TO CONTINUE THE ADVERTISING COUNCIL INC'S ILLEGAL MONOPOLY

80.    The Advertising Council Inc is a single organization that owns all or nearly all of the national public service programming and advertising market in the United States.

81.    The Advertising Council inc's monopoly is due to market barriers put up by defendants to deny market entry of competing public service causes and expression.

82.    All of the "clients" and "donors" and "partners" of The Advertising Council Inc have a common economic interest in the unreasonable restrictions defendants continue to conspire to place on competition.

83.    All of the organizations affiliated with The Advertising Council Inc exploit the tax exempt status  of  The  Advertising  Council  Inc

for money and commercial advantage.

84.    All of the organizations affiliated with The Advertising Council Inc knowingly support and or participate in all of defendants rule making,  and other plans and actions to corner the national public service programming and advertising market in the United States.

### TAX EXEMPT STATUS OF THE ADVERTISING COUNCIL INC IS EXPLOITED FOR MONEY AND POLITICAL ADVANTAGE

85.    Each    corporate    and    government    leader    connected    to The Advertising Council Inc seeks large sums of money for the causes featured    in    The    Advertising    Council    Inc's    propaganda. Each corporate and government leader associated with The Advertising Council Inc's marketing  "campaigns"  participate in concerted action to persuade the audience to pay  for  the  "chosen"  charitable services.

86.    The sole purpose of The Advertising Council Inc is to sell charitable services on a large scale between states in every state of the United States.    To achieve these sales  The Advertising Council Inc has cornered the market and exploited its tax exempt status to make money and to gain political advantage.    All of the corporate and government leaders associated with The Advertising Council  Inc  also

25

exploit the tax exempt status of The Advertising Council Inc for money and political advantage.   All of the corporate and government leaders associated with The Advertising Council Inc do exploit their business relationship with The Advertising Council Inc to inflate the money value of their public image and name recognition.

87.   The Advertising Council Inc's marketing "campaigns" are exploited by defendants for commercial advantage,   to deceive the audience by creating the illusion of more credibility than traditional advertising.

88.   EACH corporation and government agency engaged in a business relationship with The Advertising Council Inc uses The Advertising Council Inc for public relations purposes.   This is done to artificially strengthen the company's commercial image and perception.

89.   EACH corporation and government agency engaged in a business relationship with The Advertising Council Inc uses The Advertising Council Inc to stimulate awareness of and demand for their products and services.

90.   EACH corporation and government agency engaged in a business relationship with The Advertising Council Inc   uses   The   Advertising

Council Inc as an economical way to reach any target audience anywhere in the United States in masses,   saving billions of dollars over traditional advertising,  and giving each member of The Advertising Council Inc cartel multiple benefits that have a significant impact that is greater than traditional marketing and advertising vehicles.

91.   EACH corporation and government agency engaged in a business relationship with The Advertising Council Inc uses The Advertising Council Inc to make money.

92.   EACH corporation and government agency engaged in a business relationship with The Advertising Council Inc has a financial interest in maintaining The Advertising Council Inc's illegal monopoly.

93.   The entire board of directors of The Advertising Council Inc are engaged in a conflict of interest.   EACH board member uses The Advertising Council Inc to make money for the corporations they represent.   EACH board member does  have a financial interest in maintaining The Advertising Council Inc's illegal monopoly. The Advertising Council Inc's entire board of directors is made up of people with a financial  interest in  The  Advertising  Council  Inc.

27

Those board members include Mark Mays,  President of Clear Channel.    Mark Mays and his company do have a financial interest in using  The Advertising Council Inc for public relations purposes. Mays serves on The Advertising Council Inc's board of directors in order to artificially strengthen his company's commercial image, and to make and enforce the anticompetitive rules which exclude competing   public service ideas from the free national marketplace.

94.   This   case   is   about   defendants   exclusionary   agreements, unlawful tying arrangements,    and the denial of public service airtime in violation of the antitrust laws in order to maintain The Advertising Council Inc's monopoly and to destroy a new entrant in the national public service programming and advertising market in competition with The Advertising Council Inc.   This case is also about The  Advertising  Council   Inc's  use  of  it's  monopoly    power over the national public service programming and advertising market in the United States in order to continue it's total monopolization of the market,   and to continue its exclusive access to billions of dollars worth of free national public service airtime on Cox cable television and on all other interstate television systems in the United States.

28

## THE ANTICOMPETITIVE EFFECTS OF DEFENDANTS CONDUCT ON COMPETITION,  PLAINTIFF AND CONSUMERS

95.    As a result of defendants anticompetitive conduct described above The Advertising Council Inc has illegally monopolized the national public service programming and advertising market in the United States.

96.    The Advertising Council Inc's status as the world's largest public service advertising agency was achieved at public expense, while at the very same time The Advertising Council Inc continues to unjustly enrich the corporations who direct and control The Advertising Council Inc.

97.    By agreeing to advance only the interests of The Advertising Counsel Inc,  and by agreeing to cablecast only public service programs from The Advertising Council Inc's programming "universe", Cox Communications Inc and the other cartel members effectively exclude competition for their own financial gain.  This conduct has caused plaintiff to suffer large amounts of valuable lost audience exposure,    and defendants conduct continues to deprive consumers of the benefits of competition and substitutable products.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF SECTION 2 OF THE SHERMAN ACT
## FOR MONOPOLIZATION

98.    Plaintiff incorporates by this reference each and every factual allegation of paragraphs 1-97 above.

99.    The Advertising Council Inc does have monopoly power over the national public service programming and advertising market in the United States.    Plaintiff is informed and believes and based thereon alleges that defendant The Advertising Council Inc acquired and is willfully maintaining and abusing its monopoly power over the national public service programming and advertising market as described herein, by continuing to join forces with America's most powerful corporations to make sure that ALL "donations" of free national public service airtime on Cox cable television and on ALL interstate television systems in the United States,  is awarded to The Advertising Council Inc's marketing "campaigns". The Advertising Council Inc cartel and monopoly is a syndicate of America's most powerful corporations all acting in concert with each other to maintain The Advertising Council Inc's illegal monopoly,  and to utterly crush and destroy any national public service cause competing against The Advertising Council Inc.

30

100.  The Advertising Council Inc has acted intentionally and illegally to obtain and maintain its monopoly power by anticompetitive and unreasonably exclusionary conduct,   and its anticompetitive and unreasonably exclusionary conduct has enabled it to do so.

101.  The Advertising Council Inc continues to intentionally use its non profit status to put up barriers to entry into the national public service programming and advertising market by demanding millions of dollars for free airtime,   and by demanding millions of dollars for free volunteer production and marketing services.     By agreement The Advertising Council Inc acts  as a common sales agency for all cartel members specifically to deny public service airtime to any competitor of The Advertising Council Inc.

102.  The Advertising Council Inc uses its monopoly power over the national public service programming and advertising market to sell its clients' products and services and to exclude its competitors. While plaintiff did produce public service television programs that offer the audience innovative ideas and technologies,  defendants continue to harm consumers and competition by denying public service airtime to all competitors of The Advertising Council Inc.

31

103. Without fair access to the billions of dollars in tax payer subsidized free national public service airtime cablecast every year in the United States, potential competitors of The Advertising Council Inc with innovative ideas and technologies will not develop or try to enter the national public service programming and advertising market.

104. A not insubstantial amount of interstate commerce in the national public service programming and advertising market has been and continues to be affected by defendants illegal conduct, and defendants conduct has harmed customers and consumers and has harmed competition.

105. As a direct result of defendants violations of Section 2 of the Sherman Act, plaintiff has been injured and continues to be injured in his business and property in an amount to be determined at trial, which amount is to be trebled per 15 USC Section 15.

106. As a result of defendants violations of Section 2 of the Sherman Act plaintiff has suffered and will continue to suffer irreparable harm unless Cox Communications Inc is restrained and enjoined by this Court from continuing to deny national public service airtime to all competitors of The Advertising Council Inc.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF SECTION 1 OF THE SHERMAN ACT
## FOR UNLAWFUL EXCLUSIONARY AGREEMENTS

**107.** Plaintiff incorporates by this reference each and every factual allegation of paragraphs 1-106 above.

**108.** Defendant The Advertising Council Inc does have monopoly power over the national public service programming and advertising market in the United States.

**109.** Plaintiff is informed and believes and based thereon alleges that defendants have entered into and enforce agreements, policies and guidelines which unreasonably restrain trade as described herein by among other things:

**a.** excluding plaintiff and all other competitors of The Advertising Council Inc from access to free tax payer subsidized public service airtime on Cox cable television and on all other interstate television systems in the United Sates;

**b.** requiring the payment of millions of dollars to The Advertising Council Inc in order to access free tax payer subsidized public service airtime on Cox cable television and on all other interstate television systems in the United States;

33

c.     enforcing agreement between defendants not to show any national public service programs that are not provided by The Advertising Council Inc's programming "universe";

d.     enforcing agreements that make The Advertising Council Inc a common sales agency with exclusive access to the billions of dollars in free tax payer subsidized public service airtime on Cox cable television and on all other interstate television systems in the United States;

e.     enforcing agreements that make The Advertising Council Inc the sole gatekeeper of all free nation public service airtime.

110.   A not insubstantial amount of interstate commerce in the national public service programming and advertising market has been and continues to be affected by defendants illegal conduct,  and defendants conduct has harmed customers and consumers and has harmed competition.

111.   As a direct result of defendants violations of Section 1 of the Sherman  Act plaintiff has been injured and continues to be injured in his business and property in an amount to be determined at trial, which amount is to be trebled per 15 USC Section 15.

112. As a direct result of defendants violations of Section 1 of the Sherman Act plaintiff has suffered and will continue to suffer irreparable harm unless Cox Communications Inc is restrained and enjoined by this Court from continuing to deny national public service airtime to all competitors of The Advertising Council Inc.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF SECTION 1 OF THE SHERMAN ACT
### FOR UNLAWFUL TYING ARRANGEMENTS

113. Plaintiff incorporates by this reference each and every factual allegation of paragraphs 1-112 above.

114. Defendant The Advertising Council Inc does have monopoly power over the national public service programming and advertising market in the United States.

115. Plaintiff is informed and believes and based thereon alleges that defendants have entered into and enforce agreements, policies and guidelines which unreasonably restrain trade in the national public service programming and advertising market in the United States. In order to maintain The Advertising Council Inc's illegal monopoly Cox Communications Inc willfully denied plaintiff access to the national public service programming market by denying plaintiff access

to the free tax payer subsidized national public service airtime on Cox cable television. Cox Communications Inc denied plaintiff's request for national public service airtime because only programs from The Advertising Council Inc's programming "universe" receive free tax payer subsidized public service airtime on Cox cable television.

116. Services offered by The Advertising Council Inc and services provided by Cox cable television are separate services.

117. In accordance with defendants' agreement Cox Communications Inc ties access to national public service advertising airtime to the purchase of a "campaign" from The Advertising Council Inc.

118. In carrying out this tying arrangement both defendants do have sufficient economic power to appreciably restrain free competition in the national public service programming and advertising market.

119. The purpose of defendants tying arrangement is to destroy competition and to continue The Advertising Council Inc's illegal monopoly. The effect, of course, is the total elimination of competition which deprives the audience of diversity, freedom of choice, and the availability of substitutable products.

120.   A not insubstantial amount of interstate commerce in the national public service programming and advertising market has been and continues to be affected by defendants illegal conduct, and defendants conduct has harmed customers and consumers and has harmed competition.

121.   As a direct result of defendants violations of Section 1 of the Sherman  Act plaintiff has been injured and continues to be injured in his business and property in an amount to be determined at trial, which amount is to be trebled per 15 USC Section 15.

122.   As a direct result of defendants violations of Section 1 of the Sherman Act plaintiff has suffered and will continue to suffer irreparable harm unless Cox Communications   Inc   is restrained and enjoined by this Court from continuing to deny national public service airtime to all competitors of The Advertising Council Inc.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF SECTION 13a OF THE CLAYTON ACT**
**FOR DISCRIMINATION IN ADVERTISING SERVICE CHARGES**

123.   Plaintiff incorporates by this reference each and every factual allegation of paragraphs 1-122 above.

124.  Defendant The Advertising Council Inc does have monopoly power over the national public service programming and advertising market in the United States.

125.  Plaintiff is informed and believes and based thereon alleges that defendants have entered into and enforce agreements,  policies and guidelines which unreasonably restrain trade in the national public service programming and advertising market in the United States.

126.  In accordance with defendants' agreement to ensure maximum sales without competition,  defendants force competitors to pay for public service advertising that is free for The Advertising Council Inc.

127.  In      accordance      with      defendants'      agreement, Cox Communications Inc "donates" large amounts of free national public service advertising airtime to The Advertising Council Inc, but  competitors  of  The  Advertising  Council  Inc  must  pay for public service advertising on Cox cable television.

This  discrimination  in  advertising  service  charges  is  done knowingly and willfully by defendants to destroy competition and to continue The Advertising Council Inc's illegal monopoly.

128. A not insubstantial amount of interstate commerce in the national public service programming and advertising market has been and continues to be affected by defendants illegal conduct, and defendants conduct has harmed customers and consumers and has harmed competition.

129. As a direct result of defendants violations of Section 13a of the Clayton Act plaintiff has been injured and continues to be injured in his business and property in an amount to be determined at trial, which amount is to be trebled per 15 USC Section 15.

130. As a direct result of defendants violations of Section 13a of the Clayton Act plaintiff has suffered and will continue to suffer irreparable harm unless Cox Communications Inc is restrained and enjoined by this Court from continuing to deny national public service airtime to all competitors of The Advertising Council Inc.

## PRAYER

Plaintiff prays for judgment against defendants as follow:

1. For a preliminary and permanent injunction on all Claims for Relief prohibiting defendants, their officers, directors, employees,

agents, or anyone acting on their behalf from:

a.      "donating" all free national public service airtime to The Advertising Council Inc;

b.      engaging in selective and discriminatory pricing through tying or bonding arrangements;

c.      requiring payments to The Advertising Council Inc in order to access free national public service airtime;

d.      denying access to free national public service airtime to eliminate competitors of The Advertising Council Inc.

2.      For a preliminary and permanent injunction on all Claims for Relief ordering defendants to:

a.      provide access to free national public service airtime to competitors of The Advertising Council Inc;

b.      disclose the criteria on which defendants base their charges and free airtime policies.

3.      For treble damages in an amount to be determined at trial on the First, Second, Third and Fourth Claims for Relief.

4.      For attorneys' fees and costs incurred in this action.

5.      For any other relief the Court feels is right.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues triable to a jury.

## PLACE OF TRIAL

Plaintiff designates Kansas City,  Kansas as the place of trial.

DATED: *12-13-10*  , 2010

**Lionel Drake**
**PO Box 5969**
**Topeka, Kansas 66605**
**785 350-1535**