IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LIONEL DRAKE,

        Plaintiff,

vs.                         Case No. 10-2671-JTM

COX COMMUNICATIONS, INC., AND THE
ADVERTISING COUNCIL, INC.,

        Defendants.

MEMORANDUM AND ORDER

This is an action by *pro se* plaintiff Lionel Drake against defendants Cox Communications, Inc. and The Advertising Council, Inc., complaining that the defendants have refused to provide him with free cable access time to broadcast his political commentary. Invoking state tort law, Drake made comparable factual charges in a Kansas action, alleging that Cox and the Ad Council "wrongfully obstructed [his] requests for [free] public service announcement air time." *Lionel Drake v. Cox Communications, LLC and Cox Enterprises*, Case No. 09-C-1287 (Shawnee Dist. Ct. Aug. 16, 2010).

After the Shawnee Country District Court granted summary judgment on the claims advanced in that action, Drake commenced this federal action, arguing that the denial of free air time represents a violation of federal antitrust law. Cox and the Ad Council have moved to dismiss Drake's claims, and the court finds that Drake's claims should be dismissed pursuant to

Fed.R.Civ.Pr. 12(b)(6). Further the court finds that Drake — notwithstanding his voluminous pleadings — has failed to articulate any potential grounds by which his claims might be made viable, and so denies his requests for amendment and discovery.

Defendant Cox is a cable television provider. The Ad Council prepares and distributes PSAs for various organizations, including the federal government. According to his Complaint, Drake is a "freelance writer and television producer," who would like to produce public service announcements (PSAs). (Doc. 1, ¶ 4). However, he alleges he cannot do so because Cox only donates free air time to PSAs produced by the Ad Council. In his first claim, Drake argues that the defendants have violated Section 2 of the Sherman Act by monopolizing the "national market" for PSAs. In his second claim, he argues that the defendants have entered into "exclusionary agreement" to exclude persons such as himself from receiving free air time, thus violating Section 1 of the Sherman Act. Drake also asserts claims for "unlawful tying" under Section 1, and for violation of Section 13a of the Clayton Act for Discrimination.

Many of the factual allegations in Drake's Complaint are prefaced by the qualification that "Plaintiff is informed and believes and based thereon alleges" the asserted fact. However, a complaint must present averments which "raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This standard requires the plaintiff to advance "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. These allegations in the complaint must "state a claim to relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d. 1242, 1246 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570 (2007). *See also VanZandt v. Oklahoma Dept. of Human Service*, 2008 WL 1945344 *3 (10th Cir. 2008) (the plaintiff must allege sufficient facts to "nudge[] their claims

across the line from conceivable to plausible"). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claim is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

This standard is particularly relevant in antitrust actions, such as that instituted by Drake. "*Twombly* is ... an essential guide to the application of that [pleading] standard in the antitrust context." *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 320 (3d Cir. 2010). As the Third Circuit noted in that case, *Twombly* itself "turned largely on the doctrinal fact that antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case. *Id*. at 320, n. 18 (internal quotation omitted).

Drake's antitrust claims under the Sherman Act fail for multiple reasons. First, he has failed to demonstrate any standing to present his claims here. Standing in the context of the Sherman Act requires a showing of an antitrust injury, that is, "an injury of the type the antitrust laws were intended to prevent." *Tal v. Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2006) (internal quotation omitted), *cert. denied*, 549 U.S. 1209 (2007). *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977). The plaintiff must show that the defendant's actions have harmed not just himself, but competition as well. *Four Corners Nephrology Associates, P.C. v. Mercy Medical Center of Durango*, 582 F. 3d 1216, 1225 (10th Cir. 2009).

Here, Drake merely alleges the frustration of his own desire to receive free air time. He has failed to allege or show any injury to competition or to the consumer by Cox's actions in donating free air time to the Ad Council. More fundamentally, the provision of free air time for PSAs is

3

simply not commercial activity, and thus not the sort of activity which the Sherman Act was intended to address. It is charitable activity, the polar opposite of commerce, and hence does not fall within the scope of the Act. *See Bronx Legal Services v. Legal Services for New York* City, No. 02 CV 6199, 2003 U.S. Dist. LEXIS 695, at *11-*12 (S.D.N.Y. Jan. 17, 2003) (dismissing antitrust action arising from the contribution of free legal services since transactions were "akin to a series of charitable gifts"), *aff'd,* 78 Fed. Appx. 781 (2d Cir. 2003); *Dedication & Everlasting Love to Animals v. Humane Soc'y of the United States*, 50 F.3d 710 (9th Cir. 1995) (upholding dismissal of antitrust claim based on the supposed market for charitable stray animal shelters). *See also In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 92 (2nd Cir. 2008) (holding in context of Foreign Sovereign Immunity Act that "[t]he alleged conduct itself—giving away money—is not a commercial activity."), *abrogated on other gds*, *Samantar v. Yousuf*, 130 S.Ct. 2278 (2010).

In *Council for Employment and Economic Energy Use v. WHDH Corporation*, 580 F.2d 9 (1st Cir. 1978), *cert. denied*, 440 U.S. 945 (1979), the Third Circuit rejected an antitrust action against radio stations which donated free air time to a political opponent of the plaintiff, the court stressing:

> The original intent of Congress in enacting the Sherman Act was to suppress and penalize restraints on Commercial competition in the marketing of goods and services. *Apex Hosiery Co. v. Leaders*, 310 U.S. 469, 493, 495, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). It is difficult to conceive how the present complaint fits under that general rubric. Moreover, the Supreme Court has made clear its refusal to permit parties to "impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act." *Eastern Railroad Presidents Conference v. Noerr Motor Freight*, Inc., 365 U.S. 127, 137, 81 S.Ct. 523, 529, 5 L.Ed.2d 464 (1961). *See also United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The only exceptions to this rule countenanced by the Court were situations in which the political activity at issue was "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business

> relationships of a competitor." *Id*. 365 U.S. at 144, 81 S.Ct. at 533. Simply stating the exception demonstrates that it has no relationship to the facts alleged in appellant's complaint. ***This case involves political opponents, not commercial competitors; and political objectives, not market place goals***.

580 F.2d at 12 (emphasis added). The present case involves charitable contributions for public service information, "not market place goals," and Drake's claim does not involve the type of injury that the antitrust laws were designed to address.

Further, Drake's Sherman Act claims are materially deficient in his failure to provide any intelligible definition of the relevant market. Actions under both Section 1 and Section 2 require careful definition of the relevant market. *See Jacobs v. Tempur-Pedic Internat'l,* 626 F.3d 1327, 1336 (11th Cir. 2010) (Section 1); *Campfield v. State Farm Mutual Automobile Ins. Co.*, 532 F.3d 1111, 1117 (10th Cir. 2008) (Section 2). Claims under Section 2 require proof of a relevant market showing "the interchangeability of use or the cross-elasticity of demand between the product and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

Drake argues that the relevant market is the "national market" for PSAs, but this allegation is fatally overbroad. His Complaint advances no credible allegation that Cox, a regional cable provider, controls the national market for PSAs, or that Cox and the Ad Council, or indeed cable television more generally, are the only vehicles for the production and dissemination of PSAs. By its very nature, cable television is local television. Further, cable television is typically comprised of hundreds of television channels, each of which may carry its own PSAs. And cable television itself must compete with a variety of other media outlets, such as broadcast television, radio, the internet, and newspapers. Nowhere in Drake's many pages of Complaint, Response, and (unauthorized) Surreplies is there any intelligible definition of the relevant market within which Cox

and the Ad Council have supposedly acquired monopoly power. He has failed to credibly allege the existence of a "national market" for the production of PSAs.

Further, actions under Section 2 require a showing of monopolization. "Monopoly power is the power to control prices or exclude competition." *United States v. E. I. Du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956); *Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1567 (10th Cir. 1991). Here, Drake has failed to show that the defendants have monopoly power as to the production or distribution of PSAs. Aside from repeated forumulaic recitiations of the statutory language, his Complaint is devoid of any real allegation or showing that the Ad Council has any power as to the decisions of cable providers as to the recipients of free air time.

A claim under Section 1 requires proof of concerted anticompetitive action. *Abraham v. Intermountain Healthcare, Inc.*, 461 F. 3d 1249, 1256 (10th Cir. 2006). To withstand a motion to dismiss, a plaintiff raising a claim under Section 1 must advance more than an inference as to an alleged illegal agreement, he must advance specific allegations as to the particular anticompetitive agreement. *Twombly*, 550 U.S. at 550-51. Here, Drake's Complaint merely alleges at the most general level that "Defendants do have an actual and or de facto agreement to exclude competition." (Dkt. 1, ¶ 74). This generality is repeated throughout Drake's lengthy complaint, but repetition is no substitute for the specificity required by *Twombly*.

Drake's third claim is that the defendants have entered into an illegal tying agreement. But this also presupposes a commercial transaction, since "[a] tying arrangement is an agreement by a party to *sell* one product but only on the condition that the *buyer* also *purchase* a different (or tied) product." *See Eastman Kodak v. Image Technical Services, Inc.*, 504 U.S. 451, 461 (1992) (internal quotation omitted, emphasis added). In addition to the failure of Drake to provide any specific

information as to the supposed agreement itself, there is no allegation in the Complaint that the Ad Council has engaged in any exclusionary conduct. As to Cox, a tying agreement may be illegal under the Sherman Act where a party who has "a direct economic interest in the sale of the tied product" acts to exclude other parties. *Sports Racing Services. v. Sports Car Club of America*, 131 F.3d 874, 886 (10th Cir. 1997). But, again, the present case involves the production of PSAs, which are not sold by Cox. Instead, the time is charitably donated. Drake's claim is without merit.

Finally, as noted earlier, Drake advances of discriminatory pricing under "Section 13a of the Clayton Act." (Dkt. 1, at ¶ 127). There is no Section 13a of the Clayton Act. Section 3 of the Robison-Patman Act, codified at 15 U.S.C. § 13a, does prohibit some discriminatory pricing schemes, but by its terms only applies to sales of goods. *See National Black Expo v. Clear Channel Broadcasting Inc.*, No. 03 C 2751, 2007 U.S. Dist. LEXIS 9783, at *38-*39 (N.D. Ill. Feb. 7, 2007) (holding that the statute had no application of alleged discriminatory pricing in radio advertising). Moreover, the statute contains no civil remedy; it is enforced solely through criminal actions brought by the Department of Justice. *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 382 (1958).

The court denies plaintiff's request to submit an amended complaint. This request takes the form of one sentence at the end of his Response: "If the court finds that the complaint is insufficient in any area, plaintiff requests the opportunity to amend the complaint to correct these issues." (Dkt. 22, at 16).

Drake's request will be denied. Not only is the request deficient under D.Kan.Rule 15.1(a)(2), which requires that request for amendment be accompanied by a copy of the proposed amended pleading, it is also futile. Drake's original Complaint extends across 40 pages and 130 numbered paragraphs. Throughout this Complaint, and in all of his subsequent filings, Drake has failed to

present a colorable antitrust claim, and there is no reason to believe that any future pleading would correct the fatal deficiencies already present. The core of Drake's argument — that the Cox's *charitable* provision of PSAs to the Ad Council violates federal antitrust law— is simply contrary to unanimous case law, which provides that antitrust law is intended to govern *commercial* activity.

Similarly, the court will deny Drake's request for a hearing in which he would present evidence supposedly in support of his claims. Motions to Dismiss under Rule 12(b)(6) address the legal sufficiency of the allegations in a plaintiff's complaint, and thus are typically resolved without evidentiary hearing, *See Lozar v. Birds Eye Foods*, 678 F. Supp. 2d 589, 597 (W.D. Mich. 2009). As with the requested amendment, there is no reason to believe that plaintiff in a hearing will be able to state a valid basis for the present action, when he has been unable to do so in the voluminous pleadings already presented to the court.

The court will grant the motions by Cox and the Ad Council seeking to strike Drake's surreplies to the Motions to Dismiss. Surreplies are permitted only by prior leave of court, which Drake did not attempt to obtain. *Michaud v. Duncan*, 244 F. Supp. 2d 1217, 1230-31 (D. Kan. 2003). Here, the surreplies submitted by Drake are stricken not simply because he failed to seek prior leave, and because they advance no information which could not have also been included in his original Responses to the Motions to Dismiss, but because they lack any justification. That is, even if Drake had properly applied for permission to file his surreplies, leave would have been denied because the Replies submitted by Cox and the Ad Council contained no facts or arguments advanced for the first time. In the absence of such new arguments or other exceptional circumstances, no surreply would have been authorized. *Michaud*, 244 F.Supp.2d at 1231. Accordingly, Drake should not be placed

in a more favorable position by his ignoring the prior leave rule, and the surreplies are accordingly stricken.

IT IS ACCORDINGLY ORDERED this 7th day of July, 2011, that the Motions to Dismiss and to Strike of the defendants (Dkt. 13, 15, 30, 31) are hereby granted; the Motion for Evidentiary Hearing (Dkt. 29) of the plaintiff is denied.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE